Filed 3/17/16  P. v. Klapperich CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EARL WILLIAM KLAPPERICH,<br><br>Defendant and Appellant. | C075689<br><br>(Super. Ct. No. CM036641) |

A jury found defendant Earl William Klapperich guilty of arriving at an arranged meeting place for the purpose of lewd activity with a minor (Pen. Code, § 288.4, subd. (b) -- count one) and possessing matter depicting a minor engaging in sexual conduct (Pen. Code, § 311.11, subd. (a) -- count two).  The trial court sentenced him to three years eight months in prison.

Defendant now contends the trial court abused its discretion when it admitted evidence of prior uncharged sexual offenses pursuant to Evidence Code sections 352, 1101, subdivision (b), and 1108.[1]  Disagreeing with defendant's arguments, we will affirm the judgment.

---

[1]  Undesignated statutory references are to the Evidence Code.

BACKGROUND

A

On April 6, 2012, defendant, at the time a Butte County Sheriff's deputy, went to a cabin in Berry Creek with his partner, Deputy Todd Reinhardt, to perform a welfare check on two juvenile female runaways.[2] The officers stayed at the cabin for approximately an hour during which time defendant telephoned his supervisor, Sergeant Greg Reeves, and the property owner.

Defendant told Sergeant Reeves that the property owner, a friend of the girls, was aware of their presence at the cabin and agreed that they could remain there until adult supervision arrived within a couple of hours. Defendant explained that he was familiar with the boarding school the girls had run away from and that the school posed a danger to the girls. Later that evening, after Reeves got off duty, defendant returned to the cabin to check on the girls. The second visit generated a complaint against defendant regarding his conduct toward the girls. The complaint may have originated with the boarding school's director.

In early May 2012, Butte County District Attorney's Lieutenant Juan Diaz was asked to be a decoy and to pose as a 14-year-old girl. Sergeant Steve Boyd obtained a cell phone and loaded several images of naked adult women. He gave Diaz the preloaded phone and the number for defendant's cell phone.

Diaz pretended to be "Molly," one of the girls from the cabin. On May 11, 2012, defendant and Diaz exchanged text messages as follows:

"[Diaz:] Hey remember me. I got my phon. Its Molly

"[Diaz:] Hey remember me. I got my phon. Its Molly

"[Diaz:] Hey u there? Wanted 2 say hi 2 ya

---

[2] Defendant was terminated from the Butte County Sheriff's Department as a result of the events in this case.

"[Def:]  Molly what

"[Diaz:]  Molly from the cabin silly

"[Def:]  The cabin ?

"[Diaz:]  Stop plaing I was wit sam at cabin

"[Diaz:]  Remember?  Sam and I left that home in redding.  u came by with another officr

"[Def:]  Oh hey lol how are you

"[Diaz:]  Grt thinking bout u wht u up 2

"[Def:]  Working today are you okay and were u at

"[Diaz:]  U dont get any fun time wht u doing at wuk

"[Def:]   K9 training

"[Diaz:]  Ooh behave dont letum bite that cute butt 0send pix of u and the dogy

"[Def:]  So who did u end up with

"[Diaz:]  [blank message][3]

"[Def:] ?

"[Diaz:]  Where my pic of u and th dogy

"[Def:]  Were not there yet I will later

"[Diaz:]  Kum on 1 of u then

"[Def:]  Why u first

"[Diaz:]  What do u wanna see

"[Def:]  Idk

"[Diaz:]  Wer my pix of ur cute but and the dogy

"[Def:]  You First

"[Diaz:]  K wat do u wnt

---

[3]  Lieutenant Diaz testified that he sent several blank messages because he had trouble typing on the phone.

"[Def:]  Surprise me with something good

"[Diaz:]  K i got a new belly ring[4]

"[Def:]  k

"[Diaz:]  Watcha think?

"[Def:]  Nice not much of a pic though

"[Diaz:]  Fuc thts mess up!  K now whres mine of u n ur dogy

"[Def:]  You owe me a better pic

"[Diaz:]  Whos that?  I cant see uuuu!!

"[Def:]  It's me

"[Def:]  Waiting for a better pic

"[Diaz:]  This is beter in person!!

"[Def:]  All I see is stomach

"[Diaz:]  Fuc wht do you wnt !!!!

"[Def:]  Something good

"[Diaz:]  [blank message]

"[Def:]  Something good

"[Diaz:]  Ur mean send 1 of u

"[Def:]  No one of you first those are the rules

"[Diaz:]  Ok now u owe me something really good!!

"[Def:]  I still can't see shot

"[Def:]  Shit

"[Diaz:]  Its my boobies !!!  ur a dic

"[Def:]  I can't see them

"[Diaz:]  U blind its my nipples

---

**4** Lieutenant Diaz sent a picture of an adult female's exposed stomach with a belly button ring.

"[Diaz:]  Were u go!.?  ☹

"[Def:]  Sorry got busy I couldn't see any nipples if your gonna do it do it right

"[Diaz:]  [blank message]

"[Def:]  U sent a blank text

"[Diaz:]  Ur turn!  Hottie

"[Def:]  I haven't seen anything yet!  So what do u want from this

"[Def:]  ??

"[Diaz:]  Watcha think about this?  Not bad huh?

"[Def:]  Ya nice.  So what do you want from this

"[Diaz:]  I hav a frind who can driv me up ther n i still hav a key to the cabin.  U wanna hook up?

"[Def:]  You serious?  How old are you again 18-19?

"[Diaz:]  [blank message]

"[Def:]  ??Blank text again

"[Diaz:]  What!  U kno how old i am.....besides age doesnt matter anyway☺

"[Def:]  I honestly don't remember and it does if I'm the one that could get in trouble

"[Diaz:]  [blank message]

"[Def:]  Ugh quit sending blank text

"[Diaz:]  Ohhhh our little secret!.....and im dtf![5]

"[Def:]  Really why you don't even know me

"[Diaz:]  Well the way u were actin @ the cabin i thought u were dtf ☺

"[Def:]  How was I acting lol

"[Diaz:]  I could tell u were into me.  Werent u?

---

5  Lieutenant Diaz testified that "dtf" meant "down to fuck," as popularized by the television series Jersey Shore.

"[Def:]  Your pretty hot and notty so I was

"[Diaz:]  So u do remember me ☺

"[Def:]  Ya your very young

"[Diaz:]  R u gonna send me a good pic of u?

"[Def:]  Once I get a good one of u

"[Diaz:]  [blank message]

"[Diaz:]  Ur a tease

"[Def:]  No just waiting for an actual front shot with face

"[Diaz:]  Y so u can show ur cop budies

"[Def:]  Um no I ain't showing no one

"[Diaz:]  If u wanna meet u can take all pix u wnt ;)

"[Def:]  Cmon on

"[Def:]  How many guys have you been with

"[Diaz:]  No u kum on!

"[Def:]  How many guys have you been with

"[Diaz:]  Y u scared

"[Def:]  Why do u think it feels like a trap

"[Diaz:]  Wht ???

"[Def:]  Got a young girl text me outa the blue wanting to meet and fuck how do I know I could trust you to keep it quiet forever

"[Diaz:]  I dont rat

"[Def:]  Ya but how do I know that or that won't get found out if someone takes your phone

"[Diaz:]  Whtev

"[Def:]  I'm just asking

"[Diaz:]  [blank message]

"[Def:]  Blank text again lol

6

"[Diaz:]  I delete my shit if u scared im out

"[Def:]  Jumping ship already?  Not a good sign lol wouldn't you want wireline answered if the situation was reversed?

"[Diaz:]  I guess

"[Def:]  So were are you at now

"[Diaz:]  Wit friends in dublin

"[Def:]  Who's phone is it yours friends?

"[Diaz:]  Mine and im gonna need more mins soon!

"[Def:]  Ya so how would u get up here

"[Diaz:]  Got friends headed 2 chico to party can catch a ryde wit mary kay

"[Def:]  Mary would take u up to the Cabin?  When you going to Chico?

"[Diaz:]  Yea, rolling out later txt u wen in chico

"[Def:]  We could meet in Chico it be easier

"[Diaz:]  Grt ,,, c ya in chico ill txt u wen I get ther ;)

"[Def:]  K

"[Diaz:]  Rolling thru orland…;)

"[Def:]  Cool what do u want to do

"[Diaz:]  DTF!!

"[Def:]  In a car?  And couldn't you find anybody who would be dtf?  why me

"[Diaz:]  Wht ?  I am parting with u or not

"[Def:]  Okay what?

"[Diaz:] I got cas [**6**]

"[Def:]  I'm so confused

"[Def:]  Aren't you partying with friends

---

**6** Lieutenant Diaz testified he meant to write "cash."

"[Diaz:]  Sorry.  Savin my txts.  Only a few left

"[Diaz:]  They dumped me at burger hut on nord.  Wanna cumm get me?

"[Def:]  Ya give me a few min why did they dump u

"[Diaz:]  Cuz i asked them to

"[Def:]  K be thee in a min

"[Diaz:]  Im grabbin a burger inside.  Want nything

"[Def:]  No almost there."

In the early evening, Lieutenant Diaz and Investigator Jason Barkley set up surveillance at defendant's residence.  They watched him leave the house and followed him to the Burger Hut in Chico.  When defendant stopped in the parking lot, Lieutenant Diaz and other officers arrested him.  He had a cell phone, a wallet, an identification card, and a Butte County Sheriff's Department handheld radio.

Defendant was transported to the Butte County District Attorney's Office where he waived his constitutional rights and agreed to talk to Lieutenant Diaz and Investigator Barkley.  Defendant explained that he met Molly when he responded to a service call in Berry Creek.  She and another female juvenile, Sam, were runaways and were staying at the cabin.  After his shift ended, defendant returned to the cabin to check on the girls.  He did not advise the dispatcher or a sergeant of the return visit.  Ten minutes later, a family friend arrived and picked up the girls.  Defendant gave his private cell phone number to one or both girls.

Defendant denied doing anything inappropriate to either girl.  He denied touching Sam's leg or grabbing her hips during his second visit to the cabin.

Defendant discussed the text messages he received ostensibly from Molly on the day of his arrest.  They started around 7:30 a.m.  Defendant was in canine training all day.  He said that Molly was "down to fuck and wanted to hook up with" him.

Defendant asked Molly to send him a picture of herself because he was not sure who was corresponding with him. Defendant said he went to meet Molly, not to have sex, but to counsel her because she was ruining her life.

Defendant told his fiancée that he was going to meet his friend Ben. At the time of the original welfare check at the cabin, his fiancée had said that he was taking the situation with the girls too personally. Defendant did not tell his supervisor that he had received text messages from Molly that day.

Defendant admitted that his message to Molly, "I couldn't see any nipples. If you're gonna do it, do it right" was "very inappropriate." Defendant claimed he was "[j]ust playing around" with Molly when he sent that message. After further questioning, defendant claimed he had masturbated before meeting Molly because there would be "less temptation" "in case she comes onto" him. Defendant said he continued prompting Molly because their conversation had stalled and he feared she would not come to the meeting unless she believed she would be having sex. Defendant admitted that, if he were in the position of Lieutenant Diaz, he would not believe the story he was telling. Defendant admitted that it was unlawful to ask a juvenile to photograph herself in the nude.

Defendant subsequently admitted that he had lied during the interview with Lieutenant Diaz. He had panicked because secretly he is gay and only his wife and defense counsel knew. He had prior relationships with women, and presently was married to a woman, because he did not want anyone to know that he was gay.

Defendant believed the text messages from "Molly" were in fact from other officers in his department. He knew the photos were not Molly because she was short and slightly overweight whereas the picture depicted a woman with a flat stomach. During the interview he thought it would be better to lie to the investigating officer than to admit he is gay. Defendant claimed that, because he is gay, he did not have any intention to have sex with Molly when he went to meet the texter in Chico.

9

## B

A.P. was 22 years old at the time of trial. She met defendant at age 13 when she moved into his mother's home as a foster child. They began a sexual relationship when she was age 15 and he was age 21. The relationship ended when she was 18 years old.

Defendant and A.P. tried to keep the relationship secret from his mother. A.P. would sneak out of the house and meet defendant. They would get food and alcohol, hang out, and have sex. Defendant furnished a cell phone for A.P. to stay in touch with him. After A.P. turned 16 years old, defendant's mother discovered the relationship and, as a result, A.P. was relocated to a foster home in a different city.

When their relationship became long distance, A.P. used the cell phone furnished by defendant to take nude and partially clothed pictures of herself and to send them to him.

Butte County Sheriff's Sergeant Jason Hail retrieved the contents of defendant's cell phone including text messages and photographs. At trial, A.P. identified two of the photographs as depicting her when she was 16 years old. The first picture showed A.P.'s genital area with her underwear tilted to one side exposing her vagina. The second picture showed A.P. wearing a nightgown pulled up to expose the "shadow of [her] vaginal area." A.P. knew she was 16 years old in the photographs because her bedroom in the new foster home is visible in the background.

A.P. recalled sexual encounters she had with defendant and other underage girls. On one occasion, A.P. went to defendant's apartment with her best friend, E.C., who was two months younger than A.P. The girls consumed alcohol furnished by defendant. The girls got sick and A.P. could not remember anything after that due to the effects of the alcohol. When A.P. awoke, she was in bed with defendant and E.C. was on the floor naked.

When A.P. was 17 years old, she went to a Redding motel with defendant and two other girls. They all drank at the motel. One of the girls stopped drinking and stepped

10

outside. While A.P. used the bathroom, defendant began having sex with the remaining girl. A.P. crawled into bed with them and the three of them had sex together.

On another occasion when A.P. was 17 years old, she went to a different Redding motel with defendant and her close friend D.A. They all drank at the motel and defendant photographed both girls. One of the photos, which was found on defendant's phone, showed A.P. with D.A. behind her in a "doggy style" pose. The girls were holding alcohol bottles. A.P. kissed D.A. and placed her fingers in D.A.'s vagina. Defendant then kissed A.P. A.P. could not remember the rest of the encounter due to the effects of the alcohol she had consumed.

On cross-examination, A.P. admitted that she had lied to a detective in 2007 about whether she and defendant had ever had sex. On redirect examination, she explained that she was still in a relationship with defendant and wanted to protect him.

D.A. recalled the encounter with A.P. and defendant. D.A. was 16 years old at the time. Defendant obtained alcohol and brought the girls to a motel room. They drank a lot of alcohol and played drinking games with cards. D.A. recognized the photograph of herself and A.P. in the "doggy style" pose but did not recall the picture being taken. She remembered having sexual intercourse with defendant that night, but she had no memory of having sex with A.P.

Defendant testified that neither photograph of female genitalia depicted A.P. One photograph, from 2007, depicted his former girlfriend, L.C., who was three years older than him. The other photograph, from 2008, depicted his girlfriend S.V., who was 20 years old at the time. He did not know the photographs were still on his cell phone. He believed they had been deleted years ago.

## DISCUSSION

Defendant contends the trial court erred, in connection with the count one charge of arriving at an arranged meeting place for the purpose of lewd activity with a minor, when it admitted evidence of his past sexual relationships with A.P. and D.A. pursuant to

11

section 1101, subdivision (b), for the purpose of showing his intent.  (Pen. Code, § 288.4.)  He also claims the trial court erred, in connection with the count two charge of possessing matter depicting a minor engaging in sexual conduct, when it admitted the prior sexual conduct evidence under sections 1108 and 352 to prove propensity for possessing the photographs on the cell phone.  (Pen. Code, § 311.11.)

"Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition; but evidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes.  (Evid. Code, § 1101.)  Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent.  [Citation.]  On appeal, the trial court's determination of this issue, being essentially a determination of relevance, is reviewed for abuse of discretion.  [Citations.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 369; see *People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403 (*Ewoldt*); *People v. Scheid* (1997) 16 Cal.4th 1, 14.)

"Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time.  [Citation.]  Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

"The governing test . . . evaluates the risk of 'undue' prejudice, that is, ' "evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues," ' not the prejudice 'that naturally flows from relevant, highly probative evidence.' [Citation.]" (*People v. Padilla* (1995) 11 Cal.4th 891, 925, italics omitted, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

"Subject to Evidence Code section 352, Evidence Code section 1108 permits a jury to consider prior incidents of sexual misconduct for the purpose of showing a defendant's propensity to commit offenses of the same type and essentially permits such evidence to be used in determining whether the defendant is guilty of a current sexual offense charge. [Citation.] Although before Evidence Code section 1108 was enacted, prior bad acts were inadmissible when their sole relevance was to prove a defendant's propensity to engage in criminal conduct [Citations], its enactment created a statutory exception to the rule against the use of propensity evidence, allowing admission of evidence of other sexual offenses in cases charging such conduct to prove the defendant's disposition to commit the charged offense [citation]." (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1103-1104; fns. omitted.)

Before trial, the trial court held a section 402 hearing to determine whether defendant's prior misconduct was admissible. At the hearing, A.P., D.A., and E.C. testified to their prior sexual encounters with defendant. A.P.'s testimony was substantially similar to her trial testimony. D.A.'s testimony was substantially similar except that she testified that defendant began having sexual intercourse with her after she had passed out due to the effects of alcohol. E.C. testified that on several occasions she went to defendant's residence with A.P. and consumed alcohol with A.P. and defendant. On one occasion E.C. awoke from sleep and found that defendant's fingers were in her vagina. On the second occasion, after A.P. became drunk and passed out, defendant brought E.C. to his bedroom and forcibly raped her.

13

Regarding count one, the trial court framed the issue as whether, under section 1101, subdivision (b), defendant had "a sexual attraction to young women and intended to act on it." The trial court admitted the evidence from A.P. and D.A. but excluded the evidence from E.C.

The trial court found that, because there was a six-year age difference between defendant and A.P., the evidence of A.P.'s relationship with defendant was "extremely relevant to show that the defendant has a sexual attraction to young women" and was more probative than prejudicial for purposes of section 352.

The trial court found that D.A.'s testimony that she had intercourse with defendant when she was 16 years old was similarly relevant because there, too, the age difference was six years and tended to show defendant's attraction to young women. Pursuant to section 352, the trial court excluded any evidence of D.A.'s unconsciousness because it would be too prejudicial for a jury to hear that defendant had raped her without consequences.

Finally, the trial court excluded E.C.'s testimony pursuant to section 352 because it was unduly prejudicial and unduly time-consuming in that the other two girls were allowed to testify.

Regarding count two, the trial court said that if "the main issue is going to be the age of the people in the photos," then "I'm not so sure we need to get into a [section 1108] analysis since the evidence is coming in over defense objection under [section 1101, subdivision (b)]."

As for count one, defendant contends the A.P. and D.A. evidence should not have been admitted to prove his intent in going to the arranged meeting place. We disagree.

Penal Code section 288.4 provides in relevant part: "(a)(1) Every person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she believes to be a minor for the purpose of . . . engaging in lewd or lascivious behavior, shall be punished by a fine not exceeding five thousand

14

dollars ($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment.  [¶] . . . [¶]  (b) Every person described in paragraph (1) of subdivision (a) who goes to the arranged meeting place at or about the arranged time, shall be punished by imprisonment in the state prison for two, three, or four years."

The trial court found the evidence admissible to prove the purpose or intent of the meeting.  Although the court's finding that defendant "intended to act on" his sexual attraction to young women did not precisely mirror the statutory language, the discrepancy is not material.  Defendant's exchange of text messages with "Molly" supported an inference that defendant arranged the meeting for the purpose of engaging in lewd and lascivious behavior with a minor.

Defendant contends his consensual acts with A.P. and D.A. are not sufficiently similar to the intended act with "Molly" to support an inference that he harbored the same intent in each instance.  (*Ewoldt, supra*, 7 Cal.4th at p. 402.)  He relies on the fact his consensual relationship with A.P. "lasted for three years."  But the evidence of his sexual intercourse with D.A. demonstrated that his attraction to children was not limited to his relationship with A.P.

Defendant also claims his acts with A.P. and D.A., who were about six years his junior, are not sufficiently similar to the planned act to meet, at age 27, with a 14-year-old girl who was 13 years his junior.  But this discrepancy exists primarily with respect to defendant's own age, not the age of his sexual partners.  The trial court could infer that defendant had sexual interest in girls of a certain age regardless of his own age.  At age 14, "Molly" was sufficiently similar to A.P. and D.A., who were 15 and 16 years old at the time of the first sexual encounter with defendant.  No abuse of discretion appears.

In addition, defendant argues exclusion of prior acts evidence is favored where, as here, the prior acts had gone unpunished.  Such a circumstance may increase the danger that a jury might punish a defendant for the uncharged offenses, whether or not it considers him guilty of the charged offenses.  (*Ewoldt, supra*, 7 Cal.4th at p. 405.)

15

Defendant argues this is a particular concern here because the prior sex evidence was more inflammatory than the charged conduct. But we cannot say that prior-act evidence of a man in his early twenties having sex with girls in their late teens is clearly more inflammatory than evidence that a 27-year-old engaged Sheriff's deputy encouraged a person he believed to be a minor girl to send him nude photos and to meet with him after learning that she was "down to fuck." And in any event, on this record there is no indication the jury punished defendant for his prior uncharged offenses rather than doing as instructed and considering the evidence only as relevant to purpose or intent. Evidence that he had achieved the same goal with two other female juveniles did not tend "uniquely" to evoke an emotional bias against him. (*People v. Padilla, supra*, 11 Cal.4th at p. 925.) To the extent the prior acts evidence was damaging, it was because it was highly relevant to defendant's present intent.

Defendant claims the trial court should have realized that there was a substantial risk of juror confusion as the jurors considered count one and count two. But he does not assert that the jury instructions were erroneous, and we presume the jurors understood and followed the instructions. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1148, disapproved on other grounds, *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

As for count two, defendant contends the evidence of unlawful sexual intercourse with A.P. and D.A. was utterly unnecessary to prove the count two charge of possession of matter depicting a minor engaged in sexual conduct, because the prior uncharged conduct was not probative of the determinative issue, the age of the persons in the photos. Thus, the evidence should have been excluded pursuant to section 352.

It is not necessary to consider whether the trial court should have excluded the evidence at the pretrial section 402 hearing, because the evidence ultimately was relevant for another purpose. The defense subsequently presented evidence that the pictures on the phone were of adults, not children. The defense argued that one photograph, from 2007, depicted defendant's former girlfriend, L.C., who was three years older than him,

16

and the other photograph, from 2008, depicted his girlfriend S.V., who was 20 years old at the time. The defense evidence placed at issue the identity of the individuals in the photos.

Evidence of defendant's sexual intercourse with A.P. was highly relevant to identify her as the person in the photographs and to explain why she would send such matter to defendant's phone. Evidence of defendant's sexual intercourse with D.A. showed his sexual interest in minor females, further rebutting the defense claim that the people in the photographs were adults. (*People v. Dejourney, supra*, 192 Cal.App.4th at p. 1103.) The evidence involving D.A., like the evidence involving A.P., would have been properly admitted on rebuttal. Moreover, because the evidence involving A.P. was properly admitted, exclusion of the evidence involving D.A. could not have produced a result more favorable to defendant. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

DISPOSITION

The judgment is affirmed.

_____/S/_____
Mauro, Acting P. J.

We concur:

_____/S/_____
Duarte, J.

_____/S/_____
Hoch, J.

17